# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ERIN FAERY, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2519 |
| | § | |
| WEIGAND-OMEGA | § | |
| MANAGEMENT, INC., | § | |
|     Defendant. | § | |

## **MEMORANDUM AND ORDER**

This Fair Labor Standards Act ("FLSA") case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 30] filed by Defendant Weigand-Omega Management, Inc. ("Weigand"), to which Plaintiffs Erin Faery[1], Martin Szykowny, Stephen Herd, and Vanessa Garrington filed a Response [Doc. # 41], and Weigand filed a Reply [Doc. # 42]. Having reviewed the record and applied governing legal authorities, the Court **grants** the Motion.

## **I.   BACKGROUND**

Weigand is a property management company servicing self-storage facilities. Weigand typically employs two-person resident management teams composed of a

---

[1] Erin Faery married Martin Szykowny in 2011 and changed her last name to Szykowny. To limit confusion, she will be referred to by her name as it was when she was employed by Weigand and when she filed this lawsuit.

manager and an assistant manager.  In addition to hourly wages, Weigand provides all-expense paid housing, utilities, and storage space to the management teams.

Plaintiffs Erin Faery and Martin Szykowny were a management team at the Bissonnet facility.  Plaintiffs Stephen Herd and Vanessa Garrington were a management team at the Bissonnet facility and later transferred to the Gessner facility. Each Plaintiff received an Employee Policy Manual informing each Plaintiff of his/her responsibility to record accurately the time worked.  *See* Manual, Exh. AA to Plaintiffs' Response, p. 11.  The Employee Policy Manual provides that "Overtime hours are permitted for priority or emergency reasons only.  **Overtime must be justified by the Supervisor and approved in advance of the work except in emergency circumstances.**  Non-exempt employees may only work overtime with the permission of the Supervisor after a review of the work situation."  *See id.* at 11-12 (emphasis in original).  For each pay period, the employee would certify the time record as accurate.  When an employee was authorized to work more than forty (40) hours in a pay period, Weigand paid them overtime wages for the hours over forty.

Plaintiffs filed this FLSA lawsuit alleging that they worked "off the clock" hours in excess of forty in a pay period and were not paid overtime for those additional hours.  After an adequate time to complete discovery, Defendant moved for summary judgment.  The Motion has been fully briefed and is ripe for decision.

## II.     STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.  56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th

Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the

non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

### III.  ANALYSIS

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

Plaintiffs allege that they worked more than forty (40) hours in a pay period and were not compensated for those hours at the proper overtime rate.

### A. <u>Evidence of Hours Worked</u>

An employee bringing an FLSA action for unpaid overtime compensation "must first demonstrate that she has performed work for which she alleges she was not compensated." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). An employee meets this burden of proof by proving that she "in fact performed work" for which she did not receive overtime compensation and by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-688 (1946)). "Evidence of hours worked need not be perfectly accurate as long as it provides a sufficient basis to calculate the number of hours worked by each employee." *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 752-53 (S.D. Tex. 2006) (internal quotations omitted) (citing *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 598 (5th Cir. 1979)). If an employer's records are properly maintained and accurate, those records may be relied upon. *See Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir., Aug. 19, 2005).

Weigand maintained records of the hours worked by each Plaintiff in each pay period. Each Plaintiff personally prepared his/her time records and certified that they

were accurate. Plaintiffs testified that they knew they were expected to report their hours correctly, and Plaintiffs Faery and Garrington conceded that they were paid overtime wages for hours over forty (40) when those overtime hours were authorized and reported. *See* Faery Deposition, Exh. A to Motion, pp. 78-80; Garrington Deposition, Exh. D to Motion, pp. 67-68. Additionally, Plaintiffs presented evidence that Plaintiff Szykowny was paid overtime wages for three hours authorized and reported. *See* Email, Exh. Y to Response. Nonetheless, Plaintiffs allege that they worked additional, unauthorized overtime hours for which they were not paid overtime wages.

Plaintiffs Szykowny, Herd, and Garrington have failed to present evidence that raises a genuine issue of material fact regarding the hours they claim to have worked overtime. Plaintiff Szykowny testified in his deposition that he worked overtime but that he does not "have a clue" how much overtime he worked. *See* Syzkowny Deposition, Exh. B to Motion, pp. 41-42. Plaintiff Herd testified that he did not know how much overtime he worked and could not "come up with any kind of estimate." *See* Herd Deposition, Exh. C to Motion, p. 133. Similarly, Plaintiff Garrington testified that she "couldn't even begin to tell" an estimate of the overtime hours she worked and was not paid for. *See* Garrington Depo., pp. 72-73. Defendant is entitled to summary judgment on the claims of Syzkowny, Herd and Garrington. *See Harvill*,

433 F.3d at 441 (affirming summary judgment for defendant where plaintiff "presented *no* evidence of the amount or the extent of hours she worked without compensation") (emphasis in original).

Plaintiff Faery presented her own estimate of the number of overtime hours she worked. *See* Exhibit 10 to Faery Deposition. Faery prepared the document after she left Weigand's employment and not each day at the time the hours allegedly were worked. Defendant has not challenged the admissibility of this document and it, therefore, is sufficient to raise a genuine issue of material fact regarding whether Faery worked the hours as represented.[2] As a result, the Court will consider whether Faery has presented evidence that raises a genuine issue of material fact regarding whether Weigand had actual or constructive knowledge that she was working the overtime hours she claims and permitted the overtime work.

### B.   Employer Knowledge of Overtime Worked

"Management has the power to enforce the rule [prohibiting overtime] and must make every effort to do so." 29 C.F.R. § 785.13. Although an employer who knows that an employee is working overtime cannot permit that employee to perform overtime work without paying overtime compensation, "if the employee fails to notify

---

[2]   This document is technically hearsay, as it consists of numerous out-of-court statements being offered for the truth of the matters asserted. FED. R. EVID. 801(c).

the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Harvill*, 433 F.3d at 441 (citing *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)). The inquiry is whether the employer had actual knowledge that the employees were working overtime or "had the opportunity through reasonable diligence to acquire knowledge." *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969). The employer must have "suffered" or "permitted" the plaintiff to work the overtime hours. *See* 29 U.S.C. § 203 (defining "employ" to include "to suffer or permit to work"); *Harvill*, 433 F.3d at 441.

At the time she was hired by Weigand, Faery signed a written Employment Agreement acknowledging that 40 hours per week was a reasonable estimate of the number of hours she would work. *See* Faery Employment Agreement, Exh. 3 to Faery Deposition. Faery admitted that she understood she would be working 40 hours per week. *See* Faery Depo., p. 36. The Employment Agreement provided further that Faery agreed to notify Weigand immediately if circumstances changed and 40 hours per week was no longer a reasonable estimate of the number of hours she worked. *See* Faery Employment Agreement; Faery Depo. at 36-37. Plaintiff Herd notified Weigand that 40 hours was not a reasonable estimate, and his Employment Agreement was modified to reflect a new estimate of 42.125 hours per week. *See* Herd

Employment Agreement, Exh. 7 to Herd Deposition; Herd Depo., p. 80.  Faery, on the other hand, never obtained a modified Employment Agreement increasing above 40 the estimated hours she would work each pay period.

As discussed above, the Employee Policy Manual provides that "Overtime hours are permitted for priority or emergency reasons only.  **Overtime must be justified by the Supervisor and approved in advance of the work except in emergency circumstances.**  Non-exempt employees may only work overtime with the permission of the Supervisor after a review of the work situation." *See* Manual, Exh. AA to Response, pp. 11-12 (emphasis in original).  Faery admitted that she received the Employee Policy Manual and knew it was Weigand's written policy that overtime required prior supervisory authorization except in cases of emergency. *See* Faery Depo, pp. 49-52.  Faery admitted also that her supervisor, Kathy Pauley, told her on more than one occasion that overtime work needed to be approved in advance. *See id.* at 62-63.  Faery testified also that she knew she was not supposed to "work off the clock."  *See id.* at 66-67.  Faery testified in her deposition that she asked repeatedly to have overtime authorized.  *See id.* at 63.  Indeed, Faery acknowledged during her deposition that she was paid overtime wages for eight (8) hours of authorized overtime during the June 30, 2010 - July 13, 2010 pay period.  *See id.* at 78-79.

Faery argues that Pauley knew she was working overtime hours. As an initial matter, it is undisputed that Pauley was in Kansas, not in Texas. Faery asserts, however, that Pauley knew she was working overtime because there was so much work to do. Weigand submitted unrebutted evidence, however, that other managers in Faery's former position (including the current manager of the Bissonnet facility) are able to complete the work within 40 hours per week. *See, e.g.,* Declaration of Karen Dubose, Exh. G to Motion. Faery has failed to present evidence that the workload provided constructive knowledge to Pauley that Faery was allegedly working more than 40 hours per week.

Faery asserts also that she told Pauley she was working overtime. On August 13, 2010, Pauley sent a letter to Faery (and Szykowny) memorializing and responding to comments made during a telephone conversation on August 11, 2010. In that letter, Pauley noted that Faery "made statements about the number of hours that [they were] working." *See* August 13, 2010 Letter, Exh. BB to Response. Pauley reminded Faery that it had been very clear from the beginning of Faery's employment that "both team members would work 40 hours and any overtime must be pre-approved." *See id.* She also noted that the two team members would "need to cover each other so that neither person went over the 40 hours." *See id.* Pauley told Faery that if she had a reason for any overtime, it would be approved but, unless it was an

emergency, "it must be submitted prior to being worked." *See id.* There is no evidence that Faery ever advised Pauley of any specific overtime hours worked or of a legitimate reason for any overtime.

Faery's evidence shows that she was aware of Weigand's written policy against unauthorized overtime. Faery's evidence shows also that when Faery advised Pauley that she was working overtime, Pauley reminded Faery of Weigand's written overtime policy and required Faery to provide an explanation for any requested overtime. Faery's evidence shows that Pauley advised Faery that if there were a legitimate reason for the overtime work, it would be approved. There is no evidence Faery submitted to Pauley a legitimate explanation for any need to work overtime. This evidence does not raise a genuine issue of material fact that Weigand knew when Faery was working more than 40 hours per pay period and "suffered or permitted" her to work the overtime hours.

## IV.    CONCLUSION AND ORDER

Plaintiffs have failed to present evidence that raises a genuine issue of material fact in support of their FLSA claim. As a result, it is hereby

**ORDERED** that Defendant Weigand's Motion for Summary Judgment [Doc. # 30] is **GRANTED**. The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **26th** day of **July, 2012**.

_Nancy F. Atlas_
United States District Judge